JAMES McHENRY, Respondent, *v.* HUGH J. JEWETT,
Appellant.

26  453
f45ap236

*Pledgee — he cannot vote upon stock held by him — the pledgor may restrain him from so doing.*

One holding shares of corporate stock, by way of pledge or security for the repayment of money loaned, has no legal right to vote upon them without the express or implied assent of the pledgor.

The fact that the pledgee has, without authority from the pledgor, caused the stock to be registered upon the company's books in his name as trustee, does not authorize him to vote upon it.

The right of the pledgor to determine and control the votes to be given upon his shares, entitles him to maintain an action to restrain the pledgee from voting upon them, it is not necessary for him to show that his rights would be injuriously affected by the votes which the pledgee might give.

Appeal from an order made at a Special Term, continuing an injunction granted herein.

*W. W. McFarland,* for the appellant.

*B. F. Dunning,* for the respondent.

Daniels, J.:

The injunction restrained the defendant from voting upon 11,477 shares of the capital stock of the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, registered in the books of the corporation in the name of the defendant as trustee. These shares were pledged by the plaintiff, their owner, in October, 1874, to the Erie Railway Company to secure a loan of money, and by means of certain foreclosure proceeding against that company they were transferred, subject to the plaintiff's right of redemption, to the New York, Lake Erie and Western Railroad Company. The sale under this foreclosure was made in 1878, and since that time the defendant has held the shares nominally as trustee for the last named company. By what authority they were registered in his name as trustee has not been made to appear. Certainly that is not shown to have been done under the authority of the plaintiff in the action. For that reason the defendant must be regarded as holding the shares solely under the authority created by the pledge; and having

no greater right to make use of or act upon them than the relation of a mere pledge would confer, as between himself and the plaintiff in the action, that continued to be the sole measure of his rights. He had previously voted upon the shares, but the fact that he may have done that heretofore is no evidence of his right to do that hereafter, unless something more than his own preceding act can be shown for the purpose of supporting it; and nothing beyond that was made to appear upon the hearing resulting in the order from which the appeal has been taken. As the defendant held the shares simply by way of pledge or security for the repayment of money which had been loaned upon them, he could hold them only for that purpose as long as the rights of the plaintiff to redeem them by the payment of the debt was not extinguished by a lawful sale. (*Lawrence* v. *Maxwell*, 53 N. Y., 19.) They are articles of property which under such an arrangement could not be otherwise lawfully used, and under the authorities the defendant had no legal right to vote upon them without the express or implied assent of the plaintiff, the pledgor. This point was considered in *Scholfield* v. *Union Bank* (2 Cranch C. C., 115); *Vowell* v. *Thompson* (3 id., 428); *Ex parte Willcocks* (7 Cow., 402). In the last case it was held, that until the pledge was enforced and the title made absolute in the pledgee and the name was changed on the books, the pledgor should be received to vote; that it was a question between him and the pledgee with which the corporation have nothing to do. (Id., 411.) These cases are direct and decided authorities against the right of the defendant to vote upon the shares, and the principle sustained by them has in no respect been impaired by the *Matter of Barker* (6 Wend., 509) or the *Mohawk and Hudson Railroad Company* (19 id., 135), for the disputes which were there made the subject of adjudication did not arise between parties sustaining the relation existing between the plaintiff and the defendant to this action. It was simply made a question between a person offering to vote, who was registered as trustee of the shares in the first case and described as cashier in the second, and the corporation, whether such a registry of the stock authorized the person in whose name it had been made to vote upon it. No point was made in behalf of the party beneficially interested in the shares, and for that reason the cases are inapplicable to the present controversy, for here it has been shown that the defendant, in whose

name the shares had been registered as trustee, has no greater or other right than that of a pledgee, which under the authorities determining the effect of that relation will not permit him to vote upon them against the objection of the plaintiff, who is still to that extent entitled to dictate and direct the use which may be made of them.

It was not indispensable that it should be made to appear that the plaintiff's rights would be injuriously affected by the votes which the defendant might give upon the shares.

It was sufficient, for the purpose of entitling him to an injunction, that he was the party who was entitled to determine and control the votes which should be given upon the shares, if they were to be voted on at all. That is plainly the theory of one of the provisions made by the Code of Civil Procedure, defining a class of cases in which an injunction may be granted. (Id., § 604.)

To entitle the plaintiff under that provision to an injunction, it has only been required that he shall make it appear by affidavit that the defendant during the pendency of the action is threatening, or about to do an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment which may be recovered ineffectual, and all that was made to appear upon the hearing of this application at the Special Term.

It is true that the statements made designate no time when any future elections of the company would be held. But from the known usages and corporate obligations of railway companies it may consistently be presumed that an election in the company whose shares were held in this manner would take place as often as once every year. As much as that certainly may also be inferred from the affidavit of McDonough, for he states the fact to be that the defendant has voted upon the shares by proxy or otherwise at the several annual elections of the company since and including the year 1876. Even if the plaintiff's papers were defective in this respect the defect was well supplied by this affidavit. A case was made out in his behalf which entitled him to the injunction and the order should be affirmed, with ten dollars costs besides disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs and disbursements.